UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| v. § | Criminal No. 4:15-CR-0566-04 |
| § | |
| JULIO CESAR PEREZ-RODRIGUEZ § | |

## PLEA AGREEMENT

The United States of America, by and through Kenneth Magidson, United States Attorney for the Southern District of Texas, and Anibal J. Alaniz, Assistant United States Attorney, and the defendant, Julio Cesar Perez-Rodriguez ("Defendant"), and Defendant's counsel, pursuant to Rule 11(c)(1)(A) of the Federal Rules of Criminal Procedure, state that they have entered into an agreement, the terms and conditions of which are as follows:

### Defendant's Agreement

1. Defendant agrees to plead guilty to Count One of the Indictment. Count One charges the Defendant with conspiracy to possess with intent to distribute a controlled substance, namely, cocaine, in violation of Title 21, United States Code, Section 846. Defendant, by entering this plea, agrees that he/she is waiving any right to have the facts that the law makes essential to the punishment either charged in the indictment, or proved to a jury or proven beyond a reasonable doubt.

### Punishment Range

2. The **statutory** maximum penalty for each violation of Title 21, United States Code, Section 846 and 841(b)(1)(B), is imprisonment of not less than 5 years and not more than 40 years and a fine of not more than $5,000,000. Additionally, Defendant may receive a term of supervised release after imprisonment of at least 4 years. *See* Title 21, United States Code, Section

841(b)(1)(B). Defendant acknowledges and understands that if he/she should violate the conditions of any period of supervised release which may be imposed as part of his/her sentence, then Defendant may be imprisoned for the entire term of supervised release, without credit for time already served on the term of supervised release prior to such violation. *See* Title 18, United Stated Code, sections 3559(a)(3) and 3583(e)(3). Defendant understands that he/she cannot have the imposition or execution of the sentence suspended, nor is he/she eligible for parole.

### Mandatory Special Assessment

3.      Pursuant to Title 18, United States Code, section 3013(a)(2)(A), immediately after sentencing, Defendant will pay to the Clerk of the United States District Court a special assessment in the amount of one hundred dollars ($100.00) per count of conviction. The payment will be by cashier's check or money order, payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77208, Attention: Finance.

### Immigration Consequences

4.      Defendant recognizes that pleading guilty may have consequences with respect to his/her immigration status if he/she is not a citizen of the United States. Defendant understands that if he/she is not a citizen of the United States, by pleading guilty he/she may be removed from the United States, denied citizenship, and denied admission to the United States in the future. Defendant's attorney has advised Defendant of the potential immigration consequences resulting from Defendant's plea of guilty.

### Cooperation

5.      The parties understand this agreement carries the potential for a motion for departure under Section 5K1.1 of the Sentencing Guidelines. Defendant understands and agrees that whether such a motion is filed will be determined solely by the United States through the

United States Attorney for the Southern District of Texas. Should Defendant's cooperation, in the sole judgment and discretion of the United States, amount to "substantial assistance," the United States reserves the sole right to file a motion for departure pursuant to Section 5K1.1 of the United States Sentencing Guidelines. Defendant further agrees to persist in that plea through sentencing and to fully cooperate with the United States. Defendant understands and agrees that the United States will request that sentencing be deferred until that cooperation is complete.

6. Defendant understands and agrees that "fully cooperate," as that term is used herein, includes providing all information relating to any criminal activity known to Defendant, including but not limited to the conspiracy to possess with the intent to distribute a controlled substance, namely, cocaine. Defendant understands that such information includes both state and federal offenses arising therefrom. In that regard:

(a) Defendant agrees that this plea agreement binds only the United States Attorney for the Southern District of Texas and Defendant; it does not bind any other United States Attorney or any other unit of the Department of Justice;

(b) Defendant agrees to testify truthfully as a witness before a grand jury or in any other judicial or administrative proceeding when called upon to do so by the United States. Defendant further agrees to waive his/her Fifth Amendment privilege against self-incrimination for the purpose of this agreement;

(c) Defendant agrees to voluntarily attend any interviews and conferences as the United States may request;

(d) Defendant agrees to provide truthful, complete and accurate information and testimony and understands any false statements made by the defendant to the Grand Jury or at any court proceeding (criminal or civil), or to a government agent or attorney, can and will be prosecuted under the appropriate perjury, false statement, or obstruction statutes;

(e) Defendant agrees to provide to the United States all documents in his/her possession or under his/her control relating to all areas of inquiry and investigation; and

3

(f)     Should the recommended departure, if any, not meet Defendant's expectations, the Defendant understands that he/she remains bound by the terms of this agreement and cannot, for that reason alone, withdraw his/her plea.

## Waiver of Appeal and Collateral Review

7.     Defendant is aware that Title 28, United States Code, section 1291, and Title 18, United States Code, section 3742, afford a defendant the right to appeal the conviction and sentence imposed. Defendant is also aware that Title 28, United States Code, section 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the judgment of conviction and sentence has become final. Defendant knowingly and voluntarily waives the right to appeal or "collaterally attack" the conviction and sentence, except that Defendant does not waive the right to raise a claim of ineffective assistance of counsel on direct appeal, if otherwise permitted, or on collateral review in a motion under Title 28, United States Code, section 2255. In the event Defendant files a notice of appeal following the imposition of the sentence or later collaterally attacks his conviction or sentence, the United States will assert its rights under this agreement and seek specific performance of these waivers.

8.     In agreeing to these waivers, Defendant is aware that a sentence has not yet been determined by the Court. Defendant is also aware that any estimate of the possible sentencing range under the sentencing guidelines that he/she may have received from his/her counsel, the United States or the Probation Office, is a prediction and not a promise, did not induce his/her guilty plea, and is not binding on the United States, the Probation Office or the Court. The United States does not make any promise or representation concerning what sentence the defendant will receive. Defendant further understands and agrees that the United States Sentencing Guidelines are "effectively advisory" to the Court. *See United States v. Booker*, 543 U.S. 220 (2005).

4

Accordingly, Defendant understands that, although the Court must consult the Sentencing Guidelines and must take them into account when sentencing Defendant, the Court is not bound to follow the Sentencing Guidelines nor sentence Defendant within the calculated guideline range.

9. Defendant understands and agrees that each and all waivers contained in the Agreement are made in exchange for the concessions made by the United States in this plea agreement.

## The United States' Agreements

10. The United States agrees to each of the following:

(a) If the Court determines that Defendant qualifies for an adjustment under section 3E1.1(a) of the United States Sentencing Guidelines, and the offense level prior to operation of section 3E1.1(a) is 16 or greater, the United States will move under section 3E1.1(b) for an additional one-level reduction because Defendant timely notified authorities of his or her intent to plead guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources more efficiently; and

(b) Recommend to the Court that the Defendant be held accountable for three (3) kilograms of cocaine.

## Agreement Binding - Southern District of Texas Only

11. The United States Attorney's Office for the Southern District of Texas agrees that it will not further criminally prosecute Defendant in the Southern District of Texas for offenses arising from conduct charged in the indictment. This plea agreement binds only the United States Attorney's Office for the Southern District of Texas and Defendant. It does not bind any other United States Attorney's Office. The United States Attorney's Office for the Southern District of Texas will bring this plea agreement and the full extent of Defendant's cooperation to the attention of other prosecuting offices, if requested.

**United States' Non-Waiver of Appeal**

12. The United States reserves the right to carry out its responsibilities under guidelines sentencing. Specifically, the United States reserves the right:

(a) to bring its version of the facts of this case, including its evidence file and any investigative files, to the attention of the Probation Office in connection with that office's preparation of a presentence report;

(b) to set forth or dispute sentencing factors or facts material to sentencing;

(c) to seek resolution of such factors or facts in conference with Defendant's counsel and the Probation Office;

(d) to file a pleading relating to these issues, in accordance with section 6A1.2 of the United States Sentencing Guidelines and Title 18, United States Code, section 3553(a); and

(e) to appeal the sentence imposed or the manner in which it was determined.

**Sentence Determination**

13. Defendant is aware that the sentence will be imposed after consideration of the United States Sentencing Guidelines and Policy Statements, which are only advisory, as well as the provisions of Title 18, United States Code, section 3553(a). Defendant nonetheless acknowledges and agrees that the Court has authority to impose any sentence up to and including the statutory maximum set for the offense(s) to which Defendant pleads guilty, and that the sentence to be imposed is within the sole discretion of the sentencing judge after the Court has consulted the applicable Sentencing Guidelines. Defendant understands and agrees that the parties' positions regarding the application of the Sentencing Guidelines do not bind the Court and that the sentence imposed is within the discretion of the sentencing judge. If the Court should impose any sentence up to the maximum established by statute, or should the Court order any or all

of the sentences imposed to run consecutively, Defendant cannot, for that reason alone, withdraw a guilty plea, and will remain bound to fulfill all of the obligations under this plea agreement.

## Rights at Trial

14. Defendant understands that by entering into this agreement, he/she surrenders certain rights as provided in this plea agreement. Defendant understands that the rights of a defendant include the following:

   (a) If Defendant persisted in a plea of not guilty to the charges, defendant would have the right to a speedy jury trial with the assistance of counsel. The trial may be conducted by a judge sitting without a jury if Defendant, the United States, and the court all agree.

   (b) At a trial, the United States would be required to present witnesses and other evidence against Defendant. Defendant would have the opportunity to confront those witnesses and his/her attorney would be allowed to cross-examine them. In turn, Defendant could, but would not be required to, present witnesses and other evidence on his/her own behalf. If the witnesses for Defendant would not appear voluntarily, he/she could require their attendance through the subpoena power of the court; and

   (c) At a trial, Defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify. However, if Defendant desired to do so, he/she could testify on his/her own behalf.

## Factual Basis for Guilty Plea

15. Defendant is pleading guilty because he/she is in fact guilty of the charges contained in Count One of the indictment. If this case were to proceed to trial, the United States could prove each element of the offense beyond a reasonable doubt. The following facts, among others would be offered to establish Defendant's guilt:

On or about April 1, 2011, the Defendant knowingly and intentionally entered into an agreement with at least one other person to possess with the intent to distribute a controlled substance. The controlled substance involved was more than 500 grams of cocaine.

On or about May 19, 2011, Felipe Angel Guerra and Gerardo Olivarez approached Arturo Armendariz regarding finding buyers for kilogram quantities of cocaine. Arturo Armendariz then spoke to Jose Fernando Gonzalez and asked him if he knew anyone interested in buying several kilograms of cocaine. Unbeknown to Arturo Armendariz, Jose Fernando Gonzalez was in contact with Miguel Villarreal, Jr. who at that time was a high ranking member of the Gulf Cartel in northern Mexico. Miguel Villarreal, Jr. told Jose Fernando Gonzalez that several hundred kilograms of cocaine that he had in a stash house located in the Mission, Texas area were stolen. Miguel Villarreal, Jr. asked Jose Fernando Gonzalez to let him know if he heard of anyone selling kilogram quantities of cocaine at a cheap price.

Jose Fernando Gonzalez told Arturo Armendariz that he knew someone who was interested in buying kilogram quantities of cocaine. Jose Fernando Gonzalez spoke to Miguel Villarreal, Jr. and told him that Arturo Armendariz was selling kilogram quantities of cocaine at a cheap price. Miguel Villarreal, Jr. sent several individuals to buy the kilograms of cocaine from Arturo Armendariz in order to determine if the cocaine was in fact cocaine that was stolen from him.

Sometime thereafter, Arturo Armendariz received two (2) kilograms of cocaine from Felipe Angel Guerra and Gerardo Olivarez. Arturo Armendariz then met with several men who were sent by Miguel Villarreal, Jr. and gave them the two (2) kilograms of cocaine. Arturo Armendariz told the men to give him a call when they had the money. Later that day, Arturo

Armendariz received a phone call and was told to meet the caller at a warehouse located in Mission, Texas for the purpose of giving him the money for the cocaine. When Arturo Armendariz arrived at the warehouse, he was asked to get down from his pickup truck so that they could give him the money. When Arturo Armendariz did not get down from his pickup truck, a man came out from the warehouse and began shooting a firearm at Arturo Armendariz. Arturo Armendariz fled from the area but not before being struck by bullets in his stomach and thigh area.

Sometime later that day, Arturo Armendariz received a phone call from one of the individuals he had given the two (2) kilograms of cocaine to. This individual told Arturo Armendariz that all he wanted to know was who had given him the two (2) kilograms of cocaine. Arturo Armendariz told the individual that he got the two (2) kilograms of cocaine from Felipe Angel Guerra and Gerardo Olivarez.

Subsequently, Miguel Villarreal, Jr. sent several individuals from Mexico and Starr County, Texas to kidnap both Felipe Angel Guerra and Gerardo Olivarez and to take them to Mexico.

On May 28, 2011, Ovidio Guerrero and his wife, Veronica Guerrero arrived at the residence of Gerardo Olivarez located on 8 Mile Line Road and Los Ebanos Road in Mission, Texas. Shortly thereafter, a white Ford F-150 pickup truck arrived occupied by two men who identified themselves as law enforcement officers. The driver of the pickup truck asked to speak to a "Ruben Olivarez". Ovidio Guerrero approached the two men and identified himself. The driver of the white Ford F-150 pickup truck told Ovidio Guerrero that he needed to go with them and the passenger handcuffed Ovidio Guerrero and put him into the white Ford F-150 pickup truck.

Veronica Guerrero subsequently called the Hidalgo County, Texas Sheriff's Office as well as local police departments in search of her husband, Ovidio Guerrero. The law enforcement agencies told Veronica Guerrero that her husband, Ovidio Guerrero, was not in custody.

The subsequent investigation revealed that the two men in the white Ford F-150 pickup truck were not law enforcement officers; that these two men along with other conspirators kidnapped Ovidio Guerrero believing they had kidnapped Gerardo Olivarez; and that Ovidio Guerrero was transported across the Rio Grande River into Mexico.

Based on interviews with Felipe Angel Guerra and Gerardo Olivarez, agents learned that Gerardo Olivarez and Felipe Angel Guerra obtained three (3) kilograms of cocaine from the Defendant and Eduardo Macias-Gonzalez and that the Defendant and Eduardo Macias-Gonzalez obtained the kilograms of cocaine from unindicted individuals who stole the kilograms of cocaine from the stash house operated by Miguel Villarreal, Jr. in the Mission, Texas area.

The Defendant, directly and indirectly, reached an agreement with at least one other person to possess with the intent to distribute a controlled substance.

The Defendant knew of the unlawful purpose of the agreement.

The Defendant joined in the agreement willfully, that is, with the intent to further its unlawful purpose.

The Defendant furthered the unlawful purpose of the agreement by taking possession of the kilograms of cocaine from unindicted co-conspirators and delivering the kilograms of cocaine to Felipe Angel Guerra and Gerardo Olivarez.

The overall scope of the conspiracy involved at least 500 grams of cocaine.

The Defendant knew or reasonably should have known that the scope of the conspiracy involved at least 500 grams of cocaine.

## Breach of Plea Agreement

16. If Defendant should fail in any way to fulfill completely all of the obligations under this plea agreement, the United States will be released from its obligations under the plea agreement, and Defendant's plea and sentence will stand. If at any time Defendant retains, conceals, or disposes of assets in violation of this plea agreement, or if Defendant knowingly withholds evidence or is otherwise not completely truthful with the United States, then the United States may move the Court to set aside the guilty plea and reinstate prosecution. Any information and documents that have been disclosed by Defendant, whether prior to or subsequent to this plea agreement, and all leads derived therefrom, will be used against defendant in any prosecution.

## Restitution, Forfeiture, and Fines – Generally

17. This Plea Agreement is being entered into by the United States on the basis of Defendant's express representation that he/she will make a full and complete disclosure of all assets over which he/she exercises direct or indirect control, or in which he/she has any financial interest. Defendant agrees not to dispose of any assets or take any action that would effect a transfer of property in which he/she has an interest, unless Defendant obtains the prior written permission of the United States.

18. Defendant agrees to make complete financial disclosure by truthfully executing a sworn financial statement (Form OBD-500 or similar form) within 14 days of signing this plea agreement. Defendant agrees to authorize the release of all financial information requested by the United States, including, but not limited to, executing authorization forms permitting the United

11

States to obtain tax information, bank account records, credit histories, and social security information. Defendant agrees to discuss and answer any questions by the United States relating to Defendant's complete financial disclosure.

19. Defendant agrees to take all steps necessary to pass clear title to forfeitable assets to the United States and to assist fully in the collection of restitution and fines, including, but not limited to, surrendering title, executing a warranty deed, signing a consent decree, stipulating to facts regarding the transfer of title and the basis for the forfeiture, and signing any other documents necessary to effectuate such transfer. Defendant also agrees to direct any banks which have custody of his/her assets to deliver all funds and records of such assets to the United States.

20. Defendant understands that forfeiture, restitution, and fines are separate components of sentencing and are separate obligations.

## Restitution
## [NOT APPLICABLE]

21. Defendant agrees to pay full restitution to the victim(s) regardless of the count(s) of conviction. Defendant stipulates and agrees that as a result of his criminal conduct, the victim(s) incurred a monetary loss of at least $ **0**. Defendant understands and agrees that the Court will determine the amount of restitution to fully compensate the victim(s). Defendant agrees that restitution imposed by the Court will be due and payable immediately and that Defendant will not attempt to avoid or delay payment. Subject to the provisions of paragraph 7 above, Defendant waives the right to challenge in any manner, including by direct appeal or in a collateral proceeding, the restitution order imposed by the Court.

## Forfeiture
## [NOT APPLICABLE]

22. Defendant stipulates and agrees that the property listed in the Indictment's Notice of Forfeiture (and in any supplemental Notices) is subject to forfeiture, and Defendant agrees to the forfeiture of that property.

23. Defendant stipulates and agrees that the factual basis for his/her guilty plea supports the forfeiture of at least $ <u>0</u> against him/her and in favor of the United States, and Defendant agrees to the imposition of a personal money judgment for that amount against him/her and in favor of the United States of America. Defendant stipulates and admits that one or more of the conditions set forth in Title 21, United States Code, section 853(p), exists. Defendant agrees to forfeit any of his/her property, or his/her interest in property, up to the value of any unpaid portion of the money judgment, until the money judgment is fully satisfied.

24. Defendant agrees to waive any and all interest in any asset which is the subject of a related administrative or judicial forfeiture proceeding, whether criminal or civil, federal or state.

25. Defendant consents to the order of forfeiture becoming final as to Defendant immediately following this guilty plea, pursuant to Federal Rule of Criminal Procedure 32.2(b)(4)(A).

26. Subject to the provisions of paragraph 7 above, Defendant waives the right to challenge the forfeiture of property in any manner, including by direct appeal or in a collateral proceeding.

**Fines**

27. Defendant understands that under the Sentencing Guidelines the Court is permitted to order Defendant to pay a fine that is sufficient to reimburse the government for the costs of any imprisonment or term of supervised release, if any. Defendant agrees that any fine imposed by

the Court will be due and payable immediately, and Defendant will not attempt to avoid or delay payment. Subject to the provisions of paragraph 7 above, Defendant waives the right to challenge the fine in any manner, including by direct appeal or in a collateral proceeding.

### Complete Agreement

28. This written plea agreement, consisting of 16 pages, including the attached addendum of Defendant and his/her attorney, constitutes the complete plea agreement between the United States, Defendant, and Defendant's counsel. No promises or representations have been made by the United States except as set forth in writing in this plea agreement. Defendant acknowledges that no threats have been made against him/her and that he/she is pleading guilty freely and voluntarily because he/she is guilty.

29. Any modification of this plea agreement must be in writing and signed by all parties.

Filed at Houston, Texas, on July 29, 2016.

/s/ Julio Perez
Julio Cesar Perez-Rodriguez
Defendant

Subscribed and sworn to before me on July 29, 2016.

DAVID J. BRADLEY, Clerk
UNITED STATES DISTRICT CLERK

By: Rhonda S. Hawkins
Deputy United States District Clerk

APPROVED:

Kenneth Magidson

14

United States Attorney

By:  _____        _____
Anibal J. Alaniz                            Jesus Guadalupe Rivera
Assistant United States Attorney            Attorney for Julio Cesar Perez-Rodriguez
Texas State Bar No. 00966600
Federal ID No. 12590
1000 Louisiana
Suite 2300
Houston, Texas 77002
(713) 567-9000 (office)
(713) 567-9487 (direct)

15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| v. | § § | Criminal No. 4:15-CR-0566-04 |
| JULIO CESAR PEREZ-RODRIGUEZ | § | |

PLEA AGREEMENT -- ADDENDUM

I have fully explained to Defendant his/her rights with respect to the pending indictment. I have reviewed the provisions of the United States Sentencing Commission's Guidelines Manual and Policy Statements and I have fully and carefully explained to Defendant the provisions of those Guidelines which may apply in this case. I have also explained to Defendant that the Sentencing Guidelines are only advisory and the court may sentence Defendant up to the maximum allowed by statute per count of conviction. Further, I have carefully reviewed every part of this plea agreement with Defendant. To my knowledge, Defendant's decision to enter into this agreement is an informed and voluntary one.

_____  7-29-16
Jesus Guadalupe Rivera         Date
Attorney for Julio Cesar Perez-Rodriguez

I have consulted with my attorney and fully understand all my rights with respect to the indictment pending against me. My attorney has fully explained, and I understand, all my rights with respect to the provisions of the United States Sentencing Commission's Guidelines Manual which may apply in my case. I have read and carefully reviewed every part of this plea agreement with my attorney. I understand this agreement and I voluntarily agree to its terms.

_____  7-29-16
Julio Cesar Perez-Rodriguez    Date

16